Hugh CLARK et al *v.* Nick MAHAN et al

79-299                                    594 S.W. 2d 7
Supreme Court of Arkansas
Opinion delivered February 4, 1980
Rehearing denied March 10, 1980

*Clark & McNeil,* for appellants.

*Allen Gordon,* for appellees.

JOHN I. PURTLE, Justice. Harry Snowden was elected marshal of the city of Greenbrier in the 1978 general election. He was sworn in as marshal on January 1, 1979. On January 18, 1979, the city of Greenbrier enacted Ordinance No. 79-2 which established the city marshal's office as appointive. On February 8, 1979, Jackie Griffin was appointed by the council as the marshal. The eligibility of each of the men who claimed to be marshal was contested in the Faulkner Chancery Court which ruled that the city had the right to change the office to an appointed one. However, the court held that the emergency clause on Ordinance No. 79-2 was ineffective and Griffin's appointment would be effective 90 days after the passage of the ordinance. Both parties appealed.

On appeal Snowden's supporters argue that Ordinance No. 79-2 was invalid, and Griffin's supporters argue that Or-

dinance No. 78-2 was invalid. Each claims the right to serve as Greenbrier City Marshal. We agree with the appellant as to the election of city marshal. We also agree with the appellee and cross-appellant on the right of the council to create an appointive office.

The 1970 census qualified the town of Greenbrier to be reclassified as a city of the second class. Notification of this qualification was mailed by the State Board of Municipal Corporations to the mayor of Greenbrier on April 30, 1971. However, if this letter were ever received by the city of Greenbrier it failed to act upon it. On April 12, 1973, the municipality of Greenbrier adopted Ordinance No. 205 providing for the appointment of the marshal. The ordinance was styled as an ordinace of the Town Council of Greenbrier. Pursuant to this ordinance, Harry Snowden was appointed and continued to serve by appointment through December 31, 1978.

In late 1973 or early 1974 Greenbrier was in the process of issuing some bonds and discovered they were listed with the State Board of Municipal Corporations as a city of the second class. An immediate request was made to the State Board for reduction in classification to an incorporated town. The reduction was approved on May 21, 1974. February 9, 1978, the town council adopted a resolution requesting reclassification as a city of the second class. The State Board accepted this resolution on February 15, 1978, and reclassified Greenbrier as a city of the second class. September 14, 1978, the city adopted Ordinance No. 78-2 purporting to make the marshal's office elective. This ordinance was not published as required by law, and we agree with the chancellor that it was void. Snowden qualified as a candidate for city marshal and was elected in the general election held in November 1978. He was certified by the Faulkner County Board of Election Commissioners and sworn in as marshal on January 1, 1979. He received his salary for the month of January but the mayor refused to sign his check for the February salary.

January 18, 1979, the council adopted Ordinance No. 79-2 making the marshal's office appointive. February 8,

1979, Jackie Griffin was nominated by the mayor and approved by the council as city marshal. Both 1979 ordinances were passed with the vote of two of the four councilmen and the vote of the mayor.

Beginning in February, both men claimed to be city marshal and each attempted to act as such. Suits on behalf of Snowden and Griffin were filed contesting the other's eligibility to serve. The two suits were consolidated, and the chancellor ruled that Ordinance No. 78-2 was invalid and Ordinance No. 79-2 was valid except for the emergency clause. The appointment of Griffin was upheld but his appointment was deferred until the effective date of the ordinance which would be 90 days after passage.

On appeal appellants urge that Ark. Stat. Ann. § 19-1103.2 (Repl. 1968) requires that the office of marshal for the city of Greenbrier to be elective; that Snowden's status could not be terminated as he had never relinquished the office nor had he been discharged; and that Ordinance No. 79-2 was invalid because it did not receive a majority vote of the city council. On cross-appeal it is urged the chancellor erred in holding the emergency clause on Ordinance No. 79-2 was invalid.

Ark. Stat. Ann. § 19-209 (Repl. 1968) requires reclassification of cities when they attain the necessary number of inhabitants. The statute further states the mayor will be notified of such change of classification.

Ark. Stat. Ann. § 19-210 (Repl. 1968) requires as soon as the above statement has been received by the mayor it shall be the duty of the proper corporate authority to make and publish such bylaws and ordinances as shall be necessary to perfect such organization in respect to elections, duties and compensation of such officers, etc. There is no evidence that the city of Greenbrier took any such action following notification, if ever received, of the reclassification attempt in 1971. In fact, they continued to operate as a town and upon discovering they were classified as a city of the second class they immediately applied for reduction to the status of an incorporated town. They were elevated to a city of the second class

at their own request in 1978. Several statutes are involved in this matter and we will set some of them out below.

Ark. Stat. Ann. § 19-1101 (Repl. 1968):

The qualified voters of cities of the second class shall, on the first Tuesday in April, in the year eighteen hundred and eighty-eight (1888), and on the same day (on the Tuesday following the first Monday in November) every two (2) years thereafter, elect one (1) Mayor, one (1) City Marshal, one (1) Recorder, one (1) city Treasurer, and for each of the wards of any such cities two (2) aldermen, which aldermen together with the Mayor shall compose the City Council. (Act Feb. 15, 1887, No. 10).

Ark. Stat. Ann. § 19-1103 (Repl. 1968):

(The qualified voters of each city of the second class shall, at the same time, elect a city marshall (marshal), city recorder and treasurer.) Each of said officers shall continue in office until his successor is elected and qualified, and shall have such powers and perform such duties as are prescribed in this act, or as may be prescribed by any ordinance of such city, not inconsistent with the provisions of this act. (Act, Mar. 9, 1875, No. 1.)

Ark. Stat. Ann. § 19-1103.2 (Repl. 1968):

The City Marshal of cities of the Second Class shall be elected by the voters as now or may hereafter be provided by law; provided, however the City Council of any city of the Second Class, if they deem it to be to the best interest of the city, and upon passage of an ordinance by a majority of the City Council, may provide that the Marshal shall be appointed by the Mayor with the approval of the City Council. (Acts 1953, No. 172.)

Ark. Stat. Ann. § 19-1202 (Repl. 1968):

The council of any incorporated town shall have power

42

to provide by law or ordinance for the election of a treasurer, marshal and such subordinate officers as they may think necessary for the good government of the corporations; to prescribe their duties and compensation, or the fees they shall be entitled to receive for their services; to require of them an oath of office, and bond with surety for the faithful discharge of their duty. The period for the election of any officer shall be fixed at the time of the regular biennial election, and no appointment of any officer shall endure beyond the period of the term of office of the council making the appointment, and one (1) week after the qualification of the members of the succeeding council. (Act Mar. 9, 1875, No. 1.)

Thus we see that whether Greenbrier was a town or city the marshal was required by state law to be elected. However, if it were a city of the second class it could, pursuant to Ark. Stat. Ann. § 19-1103.2, provide for appointment of the marshal. We have held that an appointed marshal, serving when the office was supposed to be elective, amounted to a de facto marshal. *Thomas* v. *Sitton,* 213 Ark. 816, 212 S.W.2d 710 (1948). We have also held a city had no power to pass an ordinance abolishing the elective office of marshal. *City of Augusta* v. *Angelo,* 225 Ark. 884, 286 S.W.2d 321 (1956). The above cases were decided prior to enactment of Ark. Stat. Ann. § 19-1103.2. There has been no legislation granting authority to an incorporated town to provide for the appointment of a town marshal. He must be elected. A town is not required to have a marshal but if it does he must be elected. Therefore, while Greenbrier was a town it was required to elect a marshal if it had one at all. It is apparent the town only had a de facto marshal until the election in 1978.

Greenbrier had been an incorporated town for many years prior to becoming a second class city in 1978. When it became a city the laws of the state of Arkansas required it to have an elected city marshal. The fact that that city attempted to enact an ordinance which failed for lack of publication is of no consequence. The statute still prevails. We must conclude that Snowden was duly elected according to Ark. Stat. Ann. § 19-1103.2 and will hold office for the elective period unless removed according to Ark. Stat. Ann. §

19-919 (Repl. 1968), or other appropriate law. Ark. Stat. Ann. § 19-907.1 (Supp. 1979) provides that the salary of an elected official shall not decrease during the term for which he was elected.

We now consider the validity of the two 1979 ordinances. Ark. Stat. Ann. § 19-901 (Repl. 1968) states:

> The corporate authority of cities organized, or to be organized, shall be vested in one (1) principal officer, to be styled the Mayor, one (1) Board of Aldermen, to be styled the City Council, together with such other officers as are mentioned in this act, or may be created under its authority. (Act Mar. 9, 1875, No. 1.)

Ark. Stat. Ann. § 19-902 (Repl. 1968) provides for the election of the members of the city council or the mayor. Ark. Stat. Ann. § 19-2403 (Repl. 1968) states:

> On the passage of every by-law or ordinance, resolution or order, to enter into a contract, by any Council of any municipal corporation, the yeas and nays shall be called and recorded; and to pass any by-law or ordinance, resolution or order, a concurrence of a majority of a whole number of members elected to the Council shall be required. (Act Mar. 9, 1875, No. 1.)

We recognize this statute requires the affirmative vote of a majority of all members elected to the municipal council before an ordinance may be enacted. In *Newbold* v. *Stuttgart,* 145 Ark. 544, 224 S.W. 993 (1920), we held that a 3 to 1 vote of a 6-member council was not sufficient to enact an ordinance. In reading Ark. Stat. Ann. § 19-901 and § 19-1101 we conclude the mayor is a member of the council of a second class city and thereby entitled to vote. These two statutes appear to be in conflict. We give § 19-1101 priority because it was the latest of the two acts on the subject.

The holding that Snowden was elected for a two-year term necessarily delays the effectiveness of Ordinance No. 79-2 until the term for which Snowden was elected terminates. Thereafter the office of marshal for the city of Greenbrier will

be appointive, unless changed prior to such date. The case is remanded to the chancery court with directions to proceed in a manner consistent with this opinion.

Reversed on direct appeal, affirmed on cross-appeal, and remanded.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. I would affirm the chancellor's decree.

A valid ordinance, No. 205, provided that the marshal's office of Greenbrier was an appointive one. That ordinance was passed when Greenbrier was a second class city. To me, it is insignificant whether Greenbrier knew it was a second class city.

It was not until shortly before the general election of 1978 that the Greenbrier City Council, then knowing for certain that it was a second class city, passed Ordinance No. 78-2, providing that the office of marshal would be an elective one. The parties agree that this ordinance was invalid. But it was pursuant to this invalid ordinance that Harry Snowden was elected city marshal. He ran as an independent, was the only qualified candidate and was certified the winner.

The majority finds the valid ordinance, No. 205, is without effect because it was passed before Greenbrier knew it was a second class city. A city of the second class must elect its marshal, unless an ordinance provides otherwise. That, of course, is the case we have before us. There was a valid ordinance that provided otherwise.

The chancellor held that since the ordinance passed in September was invalid, the City of Greenbrier was where it had been before—with an ordinance which provided for the marshal be appointed. I agree with that decision. How can an election, based on an invalid law, be legal? Furthermore, all valid ordinances of a town remain in effect when a town is reclassified as a city. Otherwise, there would be chaos and no law. I have no doubt that we would have upheld the or-

dinance which provided for the marshal to be appointive, if that question was presented to us. That leads me to conclude that the chancellor was correct.

There is really no similarity between this case and the case of *City of Augusta* v. *Angelo,* 225 Ark. 884, 286 S.W.2d 321 (1956). In the *Angelo* case the City of Augusta tried to abolish an existing office.