The Honorable David Choate State Representative 709 North Main Street Beebe, AR 72012-3048
Dear Representative Choate:
This is in response to your request for an opinion concerning the requirement under A.C.A. § 14-55-204 (1987) that "[a]ll bylaws, ordinances, resolutions, or orders for the appropriation of money shall require for their passage or adoption the concurrence of a majority of the aldermen of any municipal corporation." Your specific questions concern a special meeting of the city council in a city of the second class attended by the mayor and three aldermen. You have asked the following questions in this regard:
 1. Does the mayor constitute a quorum per Clark v. Mahan, 268 Ark. 37, 594 S.W.2d 7 (1980)?
 2. If so, and the 3 aldermen vote unanimous on anything, and the mayor's vote is necessary to break the tie, according to A.C.A. § 14-55-203, will the documents be legal?
It is my opinion, in response to your first question, that under current law the mayor is not included in determining a legal quorum. See Op. Att'y Gen. 91-002. Thus, the answer to your first question is, in my opinion, "no."
Regarding special meetings, it has been held that the proceedings of special meetings of city councils are valid and legal if all the members had notice and there was a "sufficient number present to transactbusiness." Adams v. Sims, 238 Ark. 696, 700, 385 S.W.2d 13 (1964) (emphasis added), citing City of Mena v. Tomlin Bros., 118 Ark. 166,175 S.W. 1187 (1915) and City of Greeley v. Hammon, 17 Colo. 30,28 Pac. 460. In this regard, it is clear that a number less than that required for a quorum cannot convene and transact business. McQuillinMunicipal Corporations § 13.27a (3rd ed.). The question thus arises: "What number is necessary to constitute a quorum in a city of the second class?" Unlike as to cities of the first class (A.C.A. § 14-43-501(a)(2)(A) (1987)) and incorporated towns (A.C.A. § 14-45-101(b) (1987)),[1] the Arkansas Code contains no specific provision addressing the requisite quorum in cities of the second class. It has been stated, generally, that:
 [a]t common law and under various statutes and charters, a majority of the governing body constitutes a quorum[.] . . . In reckoning a quorum, the general rule is that, in the absence of a controlling charter or statutory provision affecting the rule, the total number of all the duly elected and qualified members of the body elected to it is taken as the basis.
62 C.J.S. Municipal Corporations § 399(b) (1949).
The question then arises: "Is the mayor included in determining a quorum?" Apparently, this question is ordinarily controlled by statute or charter. Id. The statutory language governing cities of the first class and incorporated towns in Arkansas (see n. 1, supra, regarding "the whole number of aldermen") indicates that the mayor is not included in calculating a quorum in those local governments. See also generally ElDorado Mayor v. El Dorado Broadcasting Co., 260 Ark. 821, 544 S.W.2d 206
(1976) (indicating that in a city of the first class, the mayor and four of the eight aldermen did not constitute a quorum). Accord City of Mena,supra (three of the six aldermen and the mayor did not constitute a quorum in city of the first class). It is suggested in two previous opinions issued by this office that following the case of Gibson v. Cityof Trumann, 311 Ark. 561, 845 S.W.2d 515 (1993), the mayors of first class cities can now be counted toward determining a quorum. See Ops. Att'y Gen. 95-229 at n. 1 and 95-180 at n. 1. The issue was not specifically raised in those opinions, however; and I must take the opportunity at this point to clarify the matter.
The court in Gibson, supra, was not faced with any issue involving the requisite quorum. Each of the ten aldermen attended the meeting in question. 311 Ark. at 561. Five voted for and five voted against an appropriation ordinance. The mayor broke the tie by voting in favor of it. Id. The question, therefore, was whether this vote was sufficient to pass the appropriation ordinance, which by statute had to be passed by "the concurrence of a majority of the aldermen. . . ." A.C.A. § 14-55-204
(1987) (emphasis added). The court upheld the mayor's vote, relying upon A.C.A. § 14-43-501(b)(1)(B) (1987) wherein it provides that the mayor "shall have a vote when his vote is needed to pass any ordinance. . . ."311 Ark. at 562.[2] The court rejected the argument that because the mayor is not an alderman he cannot vote on appropriation ordinances, holding that the legislature intended to repeal that part of §14-55-204, supra, requiring a majority of the "aldermen." Id. at 563. This followed from the expression of legislative intent under the 1981 act to allow the mayor to vote whenever his vote is needed to pass any type of ordinance. Id. at 562.
Regarding the quorum determination, there is no comparable expression of legislative intent to amend or repeal the "majority of the whole number of aldermen" requirement under A.C.A. §§ 14-43-501(a)(2)(A) and14-45-101(b). It is thus my opinion that Gibson does not stand for the proposition that the mayor in a city of the first class or incorporated town is counted in determining whether or not a quorum is present. Opinions 95-229 and 95-180 are hereby superseded to the extent they suggest otherwise.
With regard to your specific question concerning a city of the second class, it is my opinion that if faced with the question a court would likely conclude that as in the case of cities of the first class and incorporated towns, the mayor is not included in establishing a quorum. Although the Arkansas Code is silent on this precise point, it appears that the mayor would not, following the general rule (see 62 C.J.S.,supra), be included because he is not an elected member of the city council. Compare in this regard Act 10 of 1887, § 1 (providing with regard to cities of the second class that the "Aldermen together with the Mayor shall compose the City Council") and Act 346 of 1981, § 1 and title thereof (amending Act 10 of 1887 to, inter alia, remove the mayor from the council). (These acts are codified at A.C.A. §§ 14-44-103 and -107.) There is no indication, moreover, that the legislature intends to vary from the general rule.[3]
The case of Clark v. Mahan, 268 Ark. 37, 594 S.W.2d 7 (1980), referenced in your first question, does not compel a different result. That case, which involved the vote requirement under A.C.A. § 14-55-203 ("[t]o pass any bylaw, ordinance, resolution, or order, a concurrence of a majority of a whole number of members elected to the council shall be required[,]") was decided prior to passage of Act 346 of 1981 which, as noted above, removed the mayor from the council.
In conclusion, therefore, it is my opinion that a special meeting attended by 3 of the 6 aldermen and the mayor of a city of the second class would not be a legal meeting because there would be no quorum in that instance. With regard to your second question, the mayor's effort to vote to establish a majority under § 14-55-203, supra, would, in my opinion, fail because there was no legal meeting for the transaction of business. It is my opinion that any type of ordinance purportedly passed at such a meeting would be deemed invalid upon challenge.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] Both of these Code sections provide that "[a] majority of the whole number of aldermen" shall constitute a quorum.
[2] Prior to its amendment in 1981, this statute limited the mayor to voting "in case of a tie." See Acts 1875, No. 1, § 51. As stated inGibson, Act 345 of 1981 "expanded the occasions on which the mayor can vote to `when the Mayor's vote is needed' to pass `any' type of ordinance." 311 Ark. at 562.
[3] It is my understanding that legislation has been proposed in the current legislature session which would give the mayor in a city of the second class the power to establish a quorum. See H.B. 1100, 81st Gen. Ass., Reg. Sess. (1997).